**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 09-8056-PCT-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Stanford Wero, | |
| Defendant. | |

Defendant Stanford Wero has been charged with assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153(a) and 113(a)(6). On May 6, 2009, Magistrate Judge Mark Aspey denied Defendant's request for pretrial release under the Bail Reform Act of 1984, 18 U.S.C. § 3142 (the "Act"). Defendant has asked this Court to review Judge Aspey's decision and to release Defendant pending trial. Dkt. #17.

The Court has reviewed Defendant's motion, the government's response, Defendant's reply, and their attachments. Dkt. ##17, 18, 19. The Court has reviewed a transcript of the hearing before Judge Aspey and a pretrial services report in which the pretrial services officer expresses reservations about Defendant's willingness to appear, but recommends that he be released pending trial. On June 24, 2009, the Court held a hearing and heard oral argument. Defense counsel made proffers regarding testimony that would be provided by several witnesses in attendance. Counsel for the government provided several exhibits, which the Court has reviewed. For the reasons that follow, the Court affirms Judge Aspey's order of detention.

**A.     Legal Standards.**

This Court's review of Judge Aspey's decision is *de novo*. *See United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The Court must "review the evidence before the magistrate" and any additional evidence submitted by the parties "and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* at 1193. Under the Act, Defendant must be detained if the Court, following a hearing, finds that no condition or combination of conditions will reasonably assure his appearance at trial and the safety of the community. 18 U.S.C. § 3142(e).

The government contends that Defendant should be detained as both a danger to the community and a flight risk. The government must prove that Defendant is a danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f). It must prove he is a flight risk by a preponderance of the evidence. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

In this case, the Act establishes a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant or the safety of the community. This presumption is found in § 3142(e) and arises from Defendant having been charged with a crime of violence. The statutory presumption imposes a burden of production on Defendant, but the burden of persuasion remains with the government. *See United States v. Mercedes*, 254 F.3d 433, 435-36 (2d Cir. 2001). Even if Defendant produces rebuttal evidence, the presumption remains a factor to be weighed in the detention analysis. *Id.*; *see also United States v. Ward*, 63 F.Supp.2d 1203, 1209 (C.D. Cal. 1999).

**B.     Should Defendant Be Detained As A Danger To The Community?**

The Act identifies four general factors to be considered in deciding whether a defendant should be detained: the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g). The Court will address each factor in turn.

1. **The Nature and Circumstances of the Offense Charged.**

Defendant is charged with severely assaulting his wife. Defendant is alleged to have beaten his wife over an extended period of time, dragging her by the hair, kicking her, choking her, hitting her with a piece of firewood, and eventually fracturing the orbital bone around her eye. The beating reportedly occurred when Defendant's wife accused him of having an affair with another woman. Defendant alleges that his wife was the aggressor, but clearly Defendant's actions were violent. His wife suffered serious injuries. Defendant is not reported to have suffered any injuries.

2. **Weight of the Evidence Against Defendant.**

Defendant admits that he hit his wife, but disputes the extent of the assault. His wife apparently will testify to an extensive beating. Defense counsel suggested that the wife is larger than Defendant and that a witness (Tamara Lake, Defendant's current girlfriend) witnessed the assault and will corroborate Defendant's assertion that he merely hit her. The evidence of his wife's serious injury is not disputed. An order of protection issued by the Navajo Family Court on October 30, 2008, states that Defendant agreed he hit and kicked his wife on the date at issue in this case.

3. **The History and Characteristics of Defendant.**

Section 3142(g)(3) identifies a number of factors to be considered in evaluating Defendant's history and characteristics. Defense counsel has proffered that Defendant is an enrolled member of the Navajo Nation, that he has resided on the Navajo reservation for most of his life, and that he remained on the reservation for some seven months – without additional incident – after the assault occurred.

The pretrial services report contains the following criminal history. Defendant was convicted in 1991 of third degree assault. Failure to appear warrants were issued on two occasions. Defendants was also convicted in 1991 of burglary, concealing identity, and disturbing the peace. He was placed on probation and unsuccessfully terminated. In 1992, Defendant was charged in Colorado with being a fugitive from New Mexico, traffic offenses, obstruction, DUI, and aggravated assault. He pled guilty to the fugitive and traffic charges.

Defendant was charged in 1993 with failure to appear, false impersonation, and being a fugitive. In 1995, he was charged in Colorado with second degree arson and was placed on probation. In 1996, Defendant was charged in Arizona with no valid driver's license or evidence of financial responsibility. His bail deposit was forfeited, suggesting he failed to appear. In 1997, Defendant was charged in Arizona with two counts of DUI, speeding, no insurance, no valid driver's license, and failure to appear. He was convicted on the DUI and failure to appear charges. In 2001, Defendant was convicted in Utah of providing false information to a police officer. In 2002, a warrant was issued in Arizona for Defendant's failure to appear. In 2003, Defendant was charged in Arizona with making a false report to a law enforcement officer, consuming alcohol in a vehicle, and two counts of failure to appear. A warrant was also issued in New Mexico for failure to appear. In 2004, Defendant failed to appear in Arizona on two occasions. In 2007 and 2008, Defendant was charged in Arizona with interfering with judicial proceedings. The pretrial services report also notes that Defendant sought to elude law enforcement after the current offense and has used aliases on many occasions in the past. Documents provided by the government show that Defendant's wife has obtained an order of protection against him and that he has assaulted her in the past.

**4. The Nature and Seriousness of the Danger to the Community.**

As noted above, the Act establishes a rebuttable presumption that Defendant is a danger to the community. *See* 18 U.S.C. § 3142(e). Defendant's criminal history, and the serious charges in this case, provide some support for that presumption. Defendant asserts that, if released, he will reside in Aneth, Utah, some 120 miles from his wife, and that he will reside under 24-hours supervision by his mother and girlfriend. This evidence mitigates to some degree Defendant's dangerousness to the community.

**5. Analysis of the Relevant Factors.**

Factors 1, 2, and 3 favor detention, with factor 4 favoring neither side. Although it is a close question, the Court concludes, on balance, that Defendant has not overcome the rebuttable presumption established by the Act. Defendant's lengthy history of encounters

with law enforcement (including previous assaults), his prior assaults on his wife, the seriousness of her injuries in this case, and Defendant's consistent refusal to abide by court orders persuade the Court that Defendant presents a danger to his wife, particularly when she is the individual behind the current charges and, apparently, behind his loss of social security benefits.

The Court also notes that Defendant recently has resided with Tamara Lake, the woman with whom Defendant's wife accused him of having an affair. This accusation led to the assault in this case. Police reports suggest that Defendant's relationship with other women have led to physical altercations between Defendant and his wife in the past. Ms. Lake was in court for the hearing on this motion and is proposed by Defendant to be one of his supervisors if he is released. Ms. Lake resides in Kayenta, where Defendant's wife resides. Although defense counsel asserted that she would drive to Aneth to visit Defendant on weekends, the Court concludes that the provocation for prior altercations between Defendant and his wife would continue to exist if Defendant were released.

**C.    Is Defendant A Flight Risk?**

The government has established by a preponderance of the evidence that Defendant is a flight risk. This conclusion is based primarily on Defendant's lengthy history of failing to appear in court and the fact that he has resided in Utah, Colorado, Oklahoma, New Mexico, and Arizona. The pretrial services report states that he has traveled throughout the United States for work. It also notes that he attempted to avoid arrest in this case and has used many aliases in the past.

Defense counsel noted that Defendant's prior failures to appear generally have occurred in connection with minor traffic matters, and that he takes the current charges much more seriously. He proposes that Defendant reside under the supervision of his mother in Utah, with assistance from Ms. Lake.

The Court is not persuaded. The pretrial services report shows that Defendant has failed to appear for court hearings on at least 11 prior occasions. Most of these occurred after 1998, the year defense counsel asserts that Defendant stopped drinking. Defense counsel

argued that these failures were for minor matters, but the Court is concerned that a defendant who so routinely disregards court orders, who has used many aliases in the past, and who has traveled throughout the United States will fail to appear in a matter where he might face a significant prison sentence.

**D.     Collateral Consequences Of Detention.**

Defendant argues that his worker's compensation benefits will be terminated if he remains incarcerated and that he should be released in order to obtain a final settlement of a disability claim pending in Oklahoma. Although the Court understands that Defendant's incarceration may impose a financial hardship on him and his family, this usually is the case when income earners are incarcerated. The Court concludes that the relevant statutory provisions, as discussed above, require detention.

**E.     Conclusion.**

The Court finds that no condition or combination of conditions will reasonably assure the appearance of Defendant at trial or the safety of the community. *See* 18 U.S.C. § 3142(e).

**IT IS ORDERED:**

1. Defendant's Motion to Review and Revoke Detention Order (Dkt. #17) is **granted** insofar as Defendant seeks *de novo* review of Judge Aspey's decision, but **denied** insofar as Defendant seeks release pending trial.

2. Magistrate Judge Aspey's order of detention is **affirmed**.

Excludable delay pursuant to 18 U.S.C. § 3161(h)(8)(A) is found to commence on May 29, 2009 for a total of 27 days.

DATED this 24th day of June, 2009.

_____
David G. Campbell
United States District Judge